**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**AUG 5 1999**

**PATRICK FISHER**
**Clerk**

CLOVIS CARL GREEN, JR.,

      Petitioner - Appellant,

v.

WILLIAM J. PRICE, Warden,

      Respondent,

    and

ARISTEDES W. ZAVARAS,
Executive Director, Colorado
Department of Corrections; GALE
NORTON, Attorney General, Attorney
General's Office; WALLACE
PARMENTER,

      Respondents - Appellees.

No. 99-1116

(D. Colorado)

(D.C. No. 96-N-534)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Clovis Green filed this pro se 28 U.S.C. § 2254 petition challenging his Colorado state convictions on charges of second degree sexual assault and criminal extortion, and his sentence of life imprisonment.[1]

The case was referred to a magistrate judge who appointed counsel to represent Green and issued an order to show cause to the state.  The state responded, and Green filed a reply brief.  Following a thorough review of the pleadings and the state court record, the magistrate judge recommended that the petition be denied.  II R., Doc. 86.  Green filed objections which essentially reargued his original petition.     Id., Doc. 88.  Upon a further full review, the district court adopted the magistrate judge's recommendation, and Green instituted this appeal.

---

[1]Green raised thirty-one issues in his original petition, many of which were repetitive and overlapping.  Because Green had previously abused the court process, the district court had imposed filing sanctions which resulted in the dismissal of this § 2254 petition.  Finding the dismissal to be overly harsh, we reversed and remanded in an unpublished opinion. Green v. Price, No. 95-1079, 1996 WL 56075 (10th Cir. Feb. 9, 1996).

After the district court denied Green a certificate of probable cause, Green requested a certificate of appealability from this court. Because Green filed his habeas petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), the certificate of appealability provisions of AEDPA do not apply. Instead, we apply the pre-AEDPA requirement that Green obtain a certificate of probable cause before bringing his appeal, and, therefore, we construe his request as an application for a certificate of probable cause. In order to be granted a certificate of probable cause (CPC), he must make a substantial showing of the denial of a federal right. See Barefoot v. Estelle, 463 U.S. 880, 893 (1983). In addition to his request for a CPC, Green has made several motions. Because Green has failed to make a substantial showing of the denial of a federal right, we deny his request for a CPC, dismiss this appeal, and deny his outstanding motions.

The magistrate judge's recommendation thoroughly sets out the pertinent procedural record, trial evidence, and habeas arguments, which we briefly summarize. In February 1992, Green hired J. B. to do typing for him at his apartment. According to J. B.'s trial testimony, when she arrived at Green's apartment around noon on February 28, 1992, Green's roommate was there. The roommate left around 1:00 p.m., and Green arrived around 2:00. He demanded that J. B. have sex with him and threatened to put a contract out on her mother if

-3-

she did not comply. He then pulled her into the bedroom where he raped her. J. B. left at approximately 3:30 and drove directly to the police station to report the assault. The following day, February 29, 1992, Green was arrested on the sexual assault and extortion charges, and habitual criminal counts were added later.

Green's roommate also testified at trial. She stated that she returned to the apartment around 4:00 and noticed that the bed was messed up. Although he evaded her questions at first, eventually Green told her that J. B. had "come on" to him, and that they had gone to bed. The roommate also testified that when she later visited Green at jail, he asked her to tell the story the way he wanted it told. After he was arrested, Green admitted having sex with J. B., but he claimed it was consensual. Although jury trial was originally scheduled for July 15, 1992, it was reset to September 15, 1992, to accommodate the schedule of Green's stand-by counsel.

While he was awaiting trial, on March 25, 1992, Green filed a written motion requesting that his mother be appointed as an investigator. Because his mother was not licensed as an investigator, the court refused to appoint her. However, the court indicated that it would consider appointing someone who was licensed, if Green described the general nature of the investigation to be carried out. Green failed to do so. About the same time, Green demanded that his public

defender be fired and that he be allowed to represent himself. The court ordered Green to receive a competency evaluation, and that evaluation found Green to be competent.

On June 15, the court appointed an investigator. In August 1992, Green spoke to another jail inmate, inquiring if the inmate knew any girls who would give him an alibi for the time he was allegedly at the apartment. The inmate contacted the District Attorney's office who provided an undercover officer to speak with Green. In two taped conversations, Green instructed the officer to say he was at a Kinko's near the Auraria campus, and that he caught the 2:00 p.m. bus. Apparently, that bus would have gotten him home around 3:00 p.m. Both the inmate and the officer testified at trial, and the tape recording was played. Green did not testify at his trial, and he insisted on representing himself.

Green raises several issues in his habeas petition, which can be generally categorized as allegations of:

1) Violation of his constitutional right to a speedy trial.

2) Violation of his equal protection and Sixth Amendment rights resulting from the court's forcing him to undergo a competency evaluation and delaying the appointment of an investigator.

3) Violation of his right to counsel resulting from the investigation of his solicitation of perjury.

4) Outrageous governmental misconduct.

5) Violation of his right to a fair trial resulting from the court's improper evidentiary rulings, its failure to give proper cautionary instructions, and its refusal to order the state prosecutors and the department of corrections to answer his interrogatories.

6) Violations of Brady v. Maryland, 373 U.S. 83 (1963).

7) Equal protection violation in the application of Colorado's habitual criminal act.

8) Equal protection and due process violations resulting from Colorado's time limit respecting the filing of petitions for collateral review, from Colorado's interpretation of its common law marriage requirements, and from Colorado statute which allows witnesses to be impeached with evidence of convictions that are more than ten years old.

Green's appellate brief elaborates the above arguments in twenty-five separate issues. We have reviewed the record on appeal, the report and recommendation of the magistrate judge, the district court's orders, Green's brief, and his application for a certificate of probable cause. We conclude that Green has failed to make a "substantial showing of the denial of [a] federal right" by demonstrating the issues raised are "debatable among jurists of reason," or that another court could resolve the issues differently, or that the questions deserve

further proceedings. <u>Barefoot</u>, 463 U.S. at 893 n.4 (citation omitted). Therefore, for substantially the reasons stated in the magistrate judge's findings and recommendation dated September 8, 1997, [2] as adopted by the district court on March 4, 1999, we DENY Green's application for a certificate of probable cause and DISMISS his appeal. We further DENY all outstanding motions.

The mandate shall issue forthwith.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[2]We specifically respond to Green's most ardently argued objection to the magistrate judge's recommendation. Respecting the alleged discrepancy between the time that he claims to have arrived at his apartment (3:00) and the time that J. B. says he arrived there (2:00), Green argues that the trial court's delay in appointing an investigator deprived him of the opportunity to find a witness who might have substantiated the later arrival, and he contends that such a time difference would have proved that J. B.'s entire testimony was false. On this record, we conclude that any such time discrepancy is minor and would not have changed the outcome of the trial, and the trial court's actions respecting the appointment of an investigator did not deprive Green of a fair trial in violation of the Constitution.